IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Shanita B. Akintonde, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) Case No. 13-cv-804 |
| | ) |
| Toyota Motor North America Inc., | ) |
| Toyota Motor Engineering and | ) **Jury Trial is Demanded** |
| Manufacturing North America, Inc. | ) |
| Toyota Motor Sales, U.S.A., Inc., and | ) |
| Toyota Motor Corporation, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT AT LAW

**NOW COMES** Plaintiff Shanita B. Akintonde, by and through her attorneys Keenan J. Saulter and Curtis J. Tarver II of Saulter Tarver LLP and for her Complaint against Defendants Toyota Motor North America, Inc. Toyota Motor Engineering and Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation state as follows:

## OVERVIEW OF CLAIM

1. Plaintiff Shanita B. Akintonde, (hereinafter "Akintonde") brings this action against each named Defendant above (collectively, "Toyota Defendants" or "Toyota" or "Defendants") in order to redress the catastrophic injuries she suffered resulting from Defendants' carelessness and recklessness in designing, engineering, manufacturing and selling to consumers certain vehicles, but specifically the 2006 Toyota Rav4 sport utility vehicle.

1

2. On March 27, 2006 Akintonde purchased a new 2006 Toyota Rav4 ("Rav4") sports utility vehicle (VIN Number JTMZK31V565001055) from an authorized Toyota dealer, Grossinger City Toyota, in Chicago, Illinois. Grossinger's Dealer Code is 12142. Plaintiff also purchased Toyota Extra Care Vehicle Service for seven (7) years or up to 75,000 miles.

3. On March 21, 2009, Akintonde left a chess competition where she had been watching her sons compete. She left in order to get lunch for them. Eyewitnesses indicated that they saw Akintonde's vehicle accelerate and an extremely high rate of speed, then the vehicle hit a median became airborne and crashed into a Borders store and ultimately fully engulfed in flames.

4. Bystanders immediately approached the vehicle, cut off Akintonde's seat belt and removed her mere moments before the vehicle became fully engulfed in flames.

5. Despite the heroic efforts of the bystanders, Akintonde suffered tremendously debilitating injuries including but not limited to: broken legs, a broken arm as well as broken wrist. She also spent considerable time in a coma. Akintonde had at least ten (10) surgeries related to her injuries and required extensive physical therapy in order to regain the ability to perform the most basic of tasks.

6. The subject Rav4 was not equipped with a brake override system ("smart-throttle technology"). Smart-throttle technology has been known reduce the risks associated with unintended acceleration.

7. Several automakers install smart-throttle technology (hereinafter "brake override systems") in all of their models such as Audi, BMW, GM, Mazda, Mercedes-Benz, Mini and Smart. Others have brake override systems on select vehicles that they manufacture including Chrysler/Dodge/Jeep, Ford/Lincoln/Mercury, Nissan/Infiniti and Suzuki.

8. Virtually all Toyota, Lexus and Scion vehicles, including the Rav4, sold in the United

States prior to 2010 lacked this important safety feature (brake override system).

9. Toyota was aware of, but made the conscious decision to conceal, information regarding Unintended Acceleration ("UA") from the American public. Specifically, Toyota concealed information about UA problems with its vehicles, including the true nature of the defect and the number of resulting incidents, injuries and deaths. Toyota continues to mislead the public by suggesting that UA is solely a pedal/floor mat issue.

10. All Toyota vehicles with the electronic throttle control system ("ETCS") (beginning extensively in Model Year 2002, and some dating back to Model Year 1998) contain design defects that cause sudden and uncontrolled acceleration to speeds that can (and have) exceed 100 miles per hour.

11. These vehicles, including Akintonde's, are defective in that they experience UA and because they lack a mechanism, such as a brake override system, to prevent, mitigate, or stop an unintended acceleration event.

12. The Rav4 has a woefully inadequate fault detection system. The Electronic Throttle Control System and its components are highly susceptible to malfunction caused by various electronic failures, including but not limited to faulty circuit boards, short circuits, software glitches, and electromagnetic interference from sources outside the vehicle. Despite knowing of the abovementioned defects, Toyota failed to remedy the defects but instead continued to sell vehicles with the defects.

13. In addition to the other defects, the Rav4 lacked a brake override system. As such the driver is powerless in any attempt to manually reduce the engine/speed or to stop the vehicle during a UA event by stepping on the brakes. This feature is particularly important given the

propensity of Toyota vehicles to accelerate without warning or effort by the driver.

14. These defects alone, or in combination, render certain Toyota vehicles unreasonably dangerous and unable to perform as safely as an ordinary consumer would expect.

15. Defendants had ample warning, time and resources to implement a brake override system prior to the release of the Rav4. Given that the Defendants knew or should have known of UA incidents at least as early as 2002, Defendants could have instituted a recall prior to March 21, 2009. Instead, Defendants waited until February 24, 2011, a year after a federal (National Highway Traffic Safety Admnistration) probe initiated regarding "VEHICLE SPEED CONTROL: ACCELERATOR PEDAL ELECTRICAL SYSTEM: SOFTWARE" to institute the recall of potentially 1,363,244 Rav4 vehicles. However, the actual recall did not begin until April 2011.

16. Despite the feasibility and availability of a brake override system and despite the fact Defendants' awareness of the UA problem Defendants negligently and recklessly failed to install this protective measure in its vehicles including the Rav4.

17. Rather than focus on electronic issues, mechanical issues, faulty designs and other causes of UA, Defendants continued to mislead the public by obsessively focusing on floor mats and "sticky" accelerator pedals.  Even after Defendants' recall of vehicles for floor mats and sticky pedals across all of its makes and models, drivers continue to report UA incidents in vehicles that were not part of the recalls.  Likewise, even among vehicles that were recalled and repaired, drivers continue to report experiences of UA.

18. Toyota effectively used these "floor mat" and "sticky pedal" problems to downplay and divert attention away from the major design defects and safety problems with the ETCS,

4


including the need for a brake override system. There is no way for Defendants customers, including Akintonde, to reasonably inspect the major design defects of Defendants' vehicles including the Rav4.

## PARTIES

19. Plaintiff Shanita B. Akintonde, at all relevant times has been a resident of Cook County Illinois located in Northern District of Illinois.

20. At all times herein mentioned, Defendant Toyota Motor North America, Inc. was and is a California corporation and a resident and corporate citizen of California, with its principal place of business at 19001 South Western Avenue, in the City of Torrance, County of Los Angeles, in the State of California.

21. At all times herein mentioned, Defendant Toyota Motor Engineering & Manufacturing North America, Inc. was and is a Kentucky corporation and a resident and corporate citizen of Kentucky, with its principal place of business located at 25 Atlantic Avenue, in the City of Erlanger, in the State of Kentucky.

22. At all times referenced herein, Defendant Toyota Motor Sales, U.S.A., Inc. was and is a California corporation and a resident and corporate citizen of California, with its principal place of business at 19001 South Western Avenue, in the City of Torrance, County of Los Angeles, in the State of California, within the Central District of California.

23. Upon information and belief, each Toyota entity named above is a wholly owned subsidiary of Defendant Toyota Motor Corporation, a Japanese corporation with its principal place of business located at 1 Toyota-Cho, Toyota City, Aichi Prefecture, 471-3571, Japan.

24. At all times herein mentioned, Defendants Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc.,

Toyota Motor Corporation, M.F. Salta Company, Inc., d/b/a West Covina Toyota designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofitted or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and/or sold Toyota vehicles, including the vehicle operated by Akintonde.

25. At all times referenced herein, Defendants were acting as the agents and employees of each of the other Defendants, and were acting within the scope, purpose, and authority of that agency and employment and with the full knowledge, permission, and consent of each of the other Defendants.

## JURISDICTION

26. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy is greater than $75,000, exclusive of interest and costs, and because there is complete diversity of citizenship among the parties.

27. This Court has personal jurisdiction over the Defendants because a substantial portion of the wrongdoing alleged in this Complaint took place in Illinois, the Defendants are authorized to do business in Illinois, the Defendants have minimum contacts with Illinois, and/or the Defendants otherwise intentionally avail themselves of the markets in Illinois through the promotion, marketing and sale of their products in Illinois, each of which are sufficient bases to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

28. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(a) and (b) because a substantial part of the events, acts and omissions giving rise to these claims occurred in the Eastern District of Illinois, where many of the Defendants are headquartered.

**FACTUAL ALLEGATIONS**

**Toyota's Unintended Acceleration Defect**

29. For at least fifteen (15) years, Toyota has continuously promised trust and safety to prospective purchasers and the American public. Beginning in the late 1990s, Toyota manufactured, distributed and sold vehicles with an electronic throttle control system ("ETCS").

30. When Toyota first introduced the ETCS, it included a physical mechanical linkage between the accelerator and the engine throttle control. In the Model Year 2002 Defendants began manufacturing, distributing and selling vehicles without the mechanical linkage. Instead, the ETCS lacks any physical linkage from the accelerator pedal to the engine throttle. A sensor replaces this physical linkage and detects how fast the gas pedal is depressed. It then sends this information to modules that control a motorized engine throttle. The module essentially determines and tells the engine throttle how far the throttle valve should be open which directly correlates with the speed at which the vehicle accelerate.

31. The ETCS, as a computer-based system, is highly susceptible to malfunction, or "glitches," caused by various electronic and mechanical failures, including but not limited to short circuits, software errors, and electromagnetic interference from sources outside the vehicle.

32. Despite known hardware, software and component problems, ETCS vehicles do not have adequate safeguards to protect drivers from UA. The fault detection system in these vehicles is not robust enough to detect and prevent foreseeable UA events.

33. Additionally, the subject vehicles lack a brake override system, incorporated by other vehicle manufacturers, that instructs the ETCS to automatically reduce the engine power to idle whenever the brakes are applied. This measure is critical, as a significant number of motorists that experienced UA reported that no amount of braking would stop the vehicle. Moreover, the

7

absence of a fail-safe brake override system is particularly dangerous given the susceptibility of the ETCS to malfunction in Toyota vehicles.

34. These defects alone, or in combination, are lethal. In the subject vehicles, an ETCS malfunction can set the engine throttle to any speed, regardless of the position of the accelerator, and the driver has no mechanism to effectively stop or slow the car.

35. Toyota never made any significant changes to improve the acceleration system and the ETCS, despite the availability of safe and inexpensive alternative designs and feasible modifications. Rather, Toyota has repeatedly stated to consumers, the media, its dealers, and Congress, that its vehicles' electronic acceleration systems are not the cause of UA incidents.

36. Further, Toyota has known for some time that the inherent complexity and unpredictability of vehicle electronics and software counsels the use of a properly designed brake-to-idle override system that allows drivers to bring a vehicle under control in the event of a UA incident.

37. Toyota has been aware of the defective nature of the acceleration control and throttle system in its vehicles since at least 2002. Without regard for the safety of the public and its customers, Toyota failed to adequately and accurately disclose these facts to Akintonde, the public, and NHTSA. Rather, Toyota concealed these facts and continued to make statements touting the reliability and safety of its vehicles, including the subject vehicles with dangerous defects when it knew the ETCS had caused and was likely to cause further serious injuries and deaths.

38. Toyota designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofit or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the

subject vehicle, and its component parts, a product which said Defendants knew to be dangerous and unsafe for the purpose for which they intended it to be used, namely, as a passenger vehicle.

    39. At all times herein mentioned, prior to and at the time that Toyota sold the subject vehicle to Akintonde, and prior to the time that said product was used, the Defendants knew, or should have known, that the subject vehicle, and its component parts, was defectively designed and manufactured, that it had extremely dangerous properties and defects, and that it had defects which would cause serious injuries and damage to users of said product, thereby threatening the life and health of the users. Further, at all times, all Defendants knew that the defects in the subject vehicles had caused serious injuries and damage to other users of these vehicles.

    40. At all times herein mentioned, all Defendants, despite the actual knowledge described hereinabove, intentionally suppressed the aforementioned user complaints, criticisms, and other information to keep their knowledge from the general public, including Akintonde, and failed to take any steps to warn Plaintiffs, or other members of the general public, of the dangers of using the subject vehicle.

    41. At all times herein mentioned, Defendants had actual knowledge of the facts herein above alleged demonstrating that serious injury to users of the subject vehicle, including Akintonde, would potentially result. Defendants nevertheless deliberately failed and refused to recall the subject vehicle, or to take any other effective steps whatsoever to prevent such injuries. Defendants misrepresented the safety of the subject vehicle, and failed and refused to take any steps to prevent injuries from said vehicle, in order to increase the profits of Defendants from the sale of said vehicle.

    42. Defendants' conduct, as set forth above, in allowing such an extremely

dangerous product to be used by members of the general public, including Akintonde, constitutes fraud, malice and oppression toward Akintonde and others, and a conscious disregard of the safety of Akintonde and others.

**Statue of Limitations, Tolling and Estoppel**

43. Akintonde filed this lawsuit within two (2) years of first suspecting that defects in the subject vehicle were a cause of her injuries and damages.

44. Toyota was, at all relevant times, aware of the nature and existence of the defects in the subject vehicles, but at all times has continued to manufacture, certify, market, advertise, market, distribute, and sell the subject vehicles without revealing the true facts relating to the defects for the purpose of continuing to sell Rav4 vehicles and to avoid negative publicity including recalls of vehicles. The true facts about subject vehicles was concealed from the public and its customers including Akintonde.

45. Toyota's fraudulent concealment scheme discussed above, includes, but is not limited to, intentionally covering up and refusing to publicly disclose critical internal memoranda, design plans, studies, Notices of Action, Problem Detail Reports and other reports of failure and injury. Through such acts of fraudulent concealment, Toyota was able to actively conceal from the public for years the truth about the existence of the dangerously defective acceleration control and throttle system in the subject vehicles, thereby tolling the running of any applicable statute of limitations.

46. Through such acts of fraudulent concealment, Toyota has successfully concealed from the public facts necessary to support the claims herein. Plaintiffs were and continue to be prevented from knowing and having knowledge of such unlawful, unfair,

fraudulent, and deceptive conduct, or of facts that might have led to the discovery thereof.

47. For these same reasons, Defendants are estopped from claiming that Plaintiffs did not secure, preserve, maintain and/or otherwise continue to make available the subject vehicle for inspection by Defendants. Because Toyota actively and intentionally concealed the defects for years, Plaintiffs were never placed on notice that there was a need to preserve the subject vehicle.

48. The subject vehicle was completely destroyed by the fire ensuing after the crash giving rise to this lawsuit. Moreover, the vehicle was declared a total loss and Akintonde no longer had possession of the vehicle.

49. Due to the accident and Toyota's pattern of concealment, Akintonde's ability to obtain evidentiary proof in the form of an intact, easily inspected vehicle has been rendered difficult, if not unattainable.

## COUNT I. NEGLIGENCE

50. Akintonde hereby incorporates by reference and re-alleges all paragraphs 1-49 as though fully stated herein.

51. At all times herein mentioned, Defendants designed, tested, manufactured, assembled, analyzed, recommended, merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers for sale, the subject vehicle and/or its component parts.

52. Defendants owed Akintonde a duty to exercise reasonable care in the design, testing, manufacture, assembly, sale, distribution and servicing of the subject vehicle, including a duty to ensure that the subject vehicle did not cause Akintonde, other users, bystanders, or the

11

public, unnecessary injuries.

53. Defendants knew or should have known that the subject vehicle was defectively designed and inherently dangerous and has a propensity to suddenly accelerate, lose control, and cause injuries.

54. Defendants knew or should have known that the subject vehicle was defectively designed and/or manufactured and was therefore prone to failure under normal driving conditions, potentially causing injuries and/or deaths.

55. Defendants failed to exercise ordinary care and breached their duty by, among other things:

> a. Failure to use due care in the manufacture, distribution, design, sale, testing, and servicing of the subject vehicle and its component parts in order to avoid the aforementioned risks to individuals;
>
> b. Failure to provide adequate warning of the UA problem and its propensity to cause and/or contribute to an accident;
>
> c. Failure to incorporate within the vehicle and its design reasonable safeguards and protections against sudden acceleration and the consequences thereof;
>
> d. Failure to make timely correction to the design of the subject vehicle to correct the sudden acceleration

56. The aforementioned negligent acts and omissions of Defendants directly and proximately caused Akintonde's damages. Akintonde is entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

**WHEREFORE** for the foregoing reasons Plaintiff Shanita Akintonde, demands judgment against the Defendants Toyota Motor North America, Inc. Toyota Motor Engineering and Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc. and Toyota Motor

12

Corporation, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), the minimum jurisdictional amount of this Court, punitive damages, exemplary damages, attorney fees and any and all other relief this Court deems appropriate.

## COUNT II. PRODUCT LIABILITY

57. Akintonde hereby incorporates by reference and re-alleges all paragraphs 1-56 as though fully stated herein.

58. Defendants, and each of them, designed, engineered, developed, manufactured, fabricated, assembled, equipped, tested or failed to test, inspected or failed to inspect, repaired, retrofit or failed to retrofit, failed to recall, labeled, advertised, promoted, marketed, supplied, distributed, wholesaled, and sold the subject vehicle and its component parts and constituents, which was intended by the Defendants, and each of them, to be used as a passenger vehicle and for other related activities.

59. Defendants, and each of them, knew that said vehicle was to be purchased and used without inspection for defects by its owner, Plaintiffs and the general public.

60. The subject vehicle was unsafe for its intended use by reason of defects in its manufacture, design, testing, components and constituents, so that it would not safely serve its purpose, but would instead expose the users of said product to serious injuries.

61. Defendants designed the subject vehicle defectively, causing it to fail to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.

62. The risks inherent in the design of the subject vehicle outweigh significantly

any benefits of such design. Akintonde was not aware of the aforementioned defects at any time prior to recent revelations regarding problems with Toyota vehicles.

63. As a legal and proximate result of the aforementioned defects of the subject vehicle, the Akintonde sustained the injuries and damages set forth herein while using the subject vehicle in a reasonably foreseeable manner.

**WHEREFORE** for the foregoing reasons Plaintiff Shanita Akintonde, demands judgment against the Defendants Toyota Motor North America, Inc. Toyota Motor Engineering and Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), the minimum jurisdictional amount of this Court, punitive damages, exemplary damages, attorney fees and any and all other relief this Court deems appropriate.

## COUNT III. PRODUCTS LIABILITY FAILURE TO WARN

64. Akintonde hereby incorporates by reference and re-alleges all paragraphs 1-63 as though fully stated herein.

65. Defendants, and each of them, knew that the subject vehicle, and its component parts, would be purchased and used without inspection for defects in the design of the vehicle.

66. The subject vehicle was defective when it left the control of each of these Defendants.

67. At the time of the subject vehicle's design, manufacture, and sale, and continuing up to the time of Akintonde's injury, Defendants knew or should have known of the substantial dangers involved in the reasonably foreseeable use of these vehicles, whose defective

design, manufacturing, and lack of sufficient warnings caused them to have an unreasonably dangerous propensity to suffer from sudden unintended acceleration and thereby cause injuries.

68. Defendants knew that these substantial dangers are not readily recognizable to an ordinary consumer and that consumers would purchase and use these products without inspection.

69. At all relevant times, Defendants failed to provide adequate warnings, instructions, guidelines or admonitions to members of the consuming public, including Plaintiffs, of the defects, which Defendants knew, or in the exercise of reasonable care should have known, to have existed in the subject vehicle, and its component parts.

70. At the time of Akintonde's injuries, the subject vehicle was being used in the manner intended by Defendants, and in a manner that was reasonably foreseeable by Defendants as involving substantial danger that was not readily apparent to its users.

71. Akintonde's damages were the legal and proximate result of Defendants' failure to provide adequate warnings. Defendants owed Plaintiffs a duty in designing, manufacturing, warning about, and distributing the subject vehicle.

**WHEREFORE** for the foregoing reasons Plaintiff Shanita Akintonde, demands judgment against the Defendants Toyota Motor North America, Inc. Toyota Motor Engineering and Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), the minimum jurisdictional amount of this Court, punitive damages, exemplary damages, attorney fees and any and all other relief this Court deems appropriate.

## **COUNT IV. BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

72. Akintonde hereby incorporates by reference and re-alleges all paragraphs 1-71 as though fully stated herein.

73. Prior to the time of the subject incident, the Defendants impliedly warranted to members of the general public, including Akintonde, that the subject vehicle was of merchantable quality.

74. Members of the consuming public, including consumers such as Akintonde were intended third-party beneficiaries of the implied warranty of merchantability.

75. Akintonde relied on the skill and judgment of Defendants in the selection and use of the subject vehicle as a safe and reliable means for transportation.

76. The subject vehicle was not of merchantable quality as warranted by Defendants, in that it was defectively designed, thereby dangerously exposing the users of said vehicle and those around it to serious injury.

77. After Akintonde received the injuries complained of herein, notice was given by Akintonde to Defendants, by filing this lawsuit in the time and in the manner and in the form prescribed by law, of the breach of said implied warranty.

78. As a legal and proximate result of the breach of said implied warranty, Akintonde sustained the damages herein set forth.

79. Akintonde is therefore, entitled to damages in an amount to be proven at the time of trial.

**WHEREFORE** for the foregoing reasons Plaintiff Shanita Akintonde, demands judgment against the Defendants Toyota Motor North America, Inc. Toyota Motor Engineering and Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), the minimum jurisdictional amount of this Court, punitive damages, exemplary damages, attorney fees and any and all other relief this Court deems appropriate.

## COUNT V. FRADULENT CONCEALMENT

80. Akintonde hereby incorporates by reference and re-alleges all paragraphs 1-79 as though fully stated herein.

81. Throughout the relevant time period, Defendants knew that the subject vehicle was defective in that these vehicles have an unreasonably dangerous propensity to suddenly accelerate and thereby injure the users of these vehicles and others.

82. Defendants fraudulently concealed from and/or failed to disclose to Plaintiffs the true defective nature of the subject vehicle.

83. Defendants were under a duty to Akintonde to disclose and warn of the defective nature of the subject vehicles because: (1) Defendants were in a superior position to know the true state of the facts about the hidden defects in the subject vehicles, and those defects were latent; (2) Defendants made partial disclosures about the safety and quality of the subject vehicles while not revealing their true defective nature; and (3) Defendants fraudulently and affirmatively concealed the defective nature of the subject vehicles from Akintonde

84. The facts concealed and/or not disclosed by Defendants to Akintonde were material facts that a reasonable person would have considered to be important in deciding

whether or not to purchase and/or operate the subject vehicles.

    85. Defendants intentionally concealed and/or failed to disclose the true nature of the problems with the subject vehicles for the purpose of inducing Akintonde to act thereon, and Akintonde justifiably acted or relied upon, to their detriment, the concealed and/or non-disclosed facts, as evidenced by their purchase and operation of the subject vehicles.

    86. Defendants have not adequately notified past purchasers or warned future purchasers of the defects, and have not taken appropriate action to recall, buy back, or retrofit their defective products.

    87. As a direct and proximate cause of Defendants' misconduct, Akintonde has suffered actual damages.

    **WHEREFORE** for the foregoing reasons Plaintiff Shanita Akintonde, demands judgment against the Defendants Toyota Motor North America, Inc. Toyota Motor Engineering and Manufacturing North America, Inc., Toyota Motor Sales, U.S.A., Inc. and Toyota Motor Corporation, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), the minimum jurisdictional amount of this Court, punitive damages, exemplary damages, attorney fees and any and all other relief this Court deems appropriate.

**A Jury Trial is Demanded on Behalf of Plaintiff and for All Counts**

                                     s/*Keenan J. Saulter*
                                          Keenan J. Saulter
                              One of the Attorneys for Plaintiff

Keenan J. Saulter
Curtis J. Tarver II
**SAULTER TARVER LLP**
330 South Wells, Suite 1110
Chicago, Illinois 60606
(312) 986-8330 Telephone
(312) 577-1710 Facsimile
ksaulter@stllp.com
ctarver@stllp.com